347 P.2d 859

Matter of the Application of Kenneth B. CONDE for a Writ of Habeas Corpus to bring up the Body of Kevin Marve Conde, an infant.

Matter of the Estate and GUARDIANSHIP of Kevin Marve CONDE, a minor.

No. 8921.

Supreme Court of Utah.

Dec. 30, 1959.

James E. Faust, Salt Lake City, for appellant.

Oscar W. McConkie, Jr., Salt Lake City, for respondent.

McDONOUGH, Justice:

The petitioner Kenneth Conde in a habeas corpus proceeding in district court sought and obtained custody of his five-year-old son from the boy's maternal grandparents who had had him in their home since his birth. The grandparents defended alleging that the petitioner is an unfit parent, that he forfeited his parental right by abandonment, and that the interest of the child will best be served by letting him remain with them. From adverse findings and judgment on those issues the grandparents appeal.

The boy's mother went to the hospital some time before the child was born, and died about eight months after without ever leaving the hospital. The grandparents have taken care of the child ever since his birth. The petitioner remained unmarried. He brought this proceeding in contemplation of a marriage and the establishment of a home in which he could take his son. His intended wife testified of her interest and of her desire to care for the child.

■ This proceeding in the interest of the child is equitable, in fact is sometimes said to be equitable in the highest degree; and the paramount consideration is the welfare of the child involved.[1] We give some consideration to the advantaged position of the trial judge and to his findings of fact and do not disturb his judgment unless it is clearly in error.

■ On the question of abandonment: it is not necessarily culpable that under the circumstances the petitioner permitted the child to live with the grandparents. They provided a good home for him and welcomed the petitioner as a guest to visit with the child whenever he desired, which he did with varying degrees of frequency. He never at any time lost interest in his child and made contributions for his maintenance though not sufficient for his entire support. This could hardly be regarded as abandonment.

■ As to petitioner's character and fitness as a parent these facts are pertinent: at the time of the hearing he was 28 years of age; had succeeded in his employment to the extent of becoming buyer for the shoe department of a leading department store; was in charge of the department and its nine or more employees, which handles about $300,000 worth of merchandise annually. His reputation for honesty, industry and being well liked by his fellow employees is good.

1. In re Adoption of D————, 122 Utah 525, 252 P.2d 223 and authorities therein cited.

The appellants place great stress upon the refusal of the trial court to admit testimony of a psychiatrist called by them to give his opinion as to the petitioner's character and fitness as a parent. The rulings excluding the evidence appear to have been based upon the ground of privilege.[2] The appellants make various contentions with respect to certain aspects of this evidence, particularly that it had been published and the privilege was waived, the details of which are unimportant here. The offer of proof related to such facts as that the defendant was worrying excessively: about entering the service, rearing his son, paying off bills occasioned by his wife's long illness and death; that he indulged in excessive mourning and too frequent visits to the cemetery, and that he had a "tendency toward" other deviations from what is called normality. The nature of this evidence appears to be such that even if it had been admitted, there is nothing of sufficient consequence that there is any likelihood that the finding would have been that the petitioner was an unfit parent, or that such a finding would have been sustained if made. This is particularly so in view of the fact that his so-called neurotic tendencies and excess worrying seemed to center mainly about his family duties and his anxiety to properly rear his son.

■ The foregoing is recited as bearing upon the justification of the trial court in making the findings it did and in no way to cast any reflection upon the capability or the beneficence of the grandparents in doing what they have done for the child. The trial court and the petitioner himself appear to have been fully appreciative of the role they have played. He agreed that they have been good parents for the boy and have done the best they could for him. It is realized that cases dealing with the custody of small children are most difficult and we are in accord with the idea that a court should be extremely reluctant to take a five-year-old child from the only home it has ever known and in effect uproot him from his environment and order him placed in another home.[3]

■ In addition to the advantaged position of the trial court and the support that

2. As to use of psychiatric testimony to prove character see People v. Jones, 42 Cal.2d 219, 266 P.2d 38, questioning People v. Sellers, 103 Cal.App.2d 830, 230 P.2d 398. See also People v. Esposito, 287 N.Y. 389, 39 N.E.2d 925, 142 A.L.R. 956; People v. Ford, 304 N.Y. 679, 107 N.E.2d 595, reargument denied, 304 N.Y. 759, 108 N.E.2d 618. See Falknor and Steffen, Evidence of Character:

From the "Crucible of the Community" to the "Couch of the Psychiatrist," 102 U. Pa.L.Rev. 980 (1954) and Curran, Expert Psychiatric Evidence of Personality Traits, 103 U.Pa.L.Rev. 999 (1955); and also Lemmon v. Denver & R. G. W. R. Co., 9 Utah 2d 195, 341 P.2d 215.

3. Compare Baldwin v. Nielson, 110 Utah 172, 170 P.2d 179.

gives to the findings, there is the presumption that the interest of a child will best be served by placing him with his natural parent.[4] This having been done there is the further consideration that now, to again change his custody would likely bring about another emotional upheaval for the child which the appellants themselves acknowledge is fraught with hazards for him.

From the record before us there is reason to hope that the parties are of sufficient intelligence and emotional maturity that they have and will continue to reconcile themselves to the necessities of the situation, and to realize the great value that the love and concern of all of them have for the child, and that they should exercise forbearance and consideration for him and for each other so that he may have the highest possible degree of love and association both with his parents and grandparents that the circumstances will permit.

Affirmed. Costs to respondent.

CROCKETT, C. J., and CALLISTER and WADE, JJ., concur.

HENRIOD, J., does not participate herein.

4. Jones v. Moore, 61 Utah 383, 213 P. 191; In re State in Interest of C———, 9 Utah 2d 345, 344 P.2d 981.